Filed 12/1/15  P. v. Alvarez CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>SERGIO REYES ALVAREZ,<br><br>  Defendant and Appellant. | F070065<br><br>(Super. Ct. No. BF140974A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Sara E. Coppin, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Franson, J. and Peña, J.

## INTRODUCTION

On April 6, 2012, pursuant to a plea agreement, appellant Sergio Reyes Alvarez pled no contest to one count of violating Penal Code[1] section 288, subdivision (c)(1), lewd act with a child. He moved to set aside his conviction on June 25, 2014, on the basis that he had not been advised of the immigration consequences of his plea. The motion was denied. Alvarez filed a notice of appeal and a certificate of probable cause was granted. Appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). We will affirm.

## FACTUAL AND PROCEDURAL SUMMARY

The circumstances of the offense are taken from the probation report. In June or July of 2011, victim D.B., then 15 years old, was working for Alvarez in Alvarez's business. One day, Alvarez drove D.B. home after work. On the drive, Alvarez began rubbing D.B.'s penis until D.B. ejaculated. D.B. never told Alvarez to stop because Alvarez had bought him a cell phone earlier that day.

Two or three days later, Alvarez drove D.B. to Alvarez's home. The two went into Alvarez's bedroom, where Alvarez turned on a pornographic movie. Alvarez removed D.B.'s pants and began "jacking [him] off." After a few minutes, Alvarez began "sucking [D.B.'s] penis" with his mouth. After a few more minutes, Alvarez and D.B. engaged in anal sex, with D.B. inserting his penis into Alvarez's anus. After they finished, Alvarez drove D.B. home. D.B. claimed the encounter was consensual.

Around February 10, 2012, D.B. told his mother what had happened with Alvarez because "he knew what he did was wrong and it was eating him up inside from hiding it from everyone." D.B.'s mother notified police. Police had D.B. transported to the location where D.B. stated the sexual encounter occurred; D.B. identified Alvarez's residence.

---

[1] References to code sections are to the Penal Code unless otherwise specified.

On March 6, 2012, Alvarez was interviewed by police at the police station. Alvarez admitted performing oral sex on D.B. and engaging in anal sex with him, in Alvarez's home. Alvarez maintained the sexual encounter was consensual. Alvarez also acknowledged knowing that D.B. was a minor.

On March 8, 2012, Alvarez was charged with three felonies: in count 1 with violating section 286, subdivision (b)(2), sodomy with a person under the age of 16 years; in count 2 with a violation of section 288, subdivision (c)(1), lewd act on a child; and in count 3 with a violation of 288a, subdivision (b)(2), oral copulation with a minor. The public defender was appointed to represent Alvarez and he pled not guilty to all counts. On March 21, 2012, the public defender was relieved as counsel for Alvarez and attorney David Rivera was retained.

On April 6, 2012, Alvarez signed a waiver of rights and plea form. The plea form provided that Alvarez would plead guilty or no contest to the count 2 offense, in exchange for dismissal of all other charges and "nine months maximum sentence as condition of felony probation." A portion of the document informs a defendant of the consequences of entering a plea. One statement initialed by Alvarez states:

> "I understand that if I am not a Citizen of the United States, my guilty or no contest plea will result in my deportation, exclusion from admission to the United States, and denial of naturalization under the laws of the United States. **Deportation is mandatory for some offenses. I have fully discussed this matter with my attorney and understand the serious immigration consequences of my plea.**" (Bolding in original.)

At the change of plea hearing on April 6, 2012, the trial court asked Alvarez if he had discussed the plea with his counsel; Alvarez responded affirmatively. The trial court also asked if Alvarez had read, initialed and signed the change of plea form in the trial court's possession; Alvarez responded affirmatively. The trial court asked if Alvarez had any questions; he had none.

The trial court found that Alvarez understood his legal and constitutional rights and waived those rights; there was a factual basis for the plea; and Alvarez entered into the plea freely and voluntarily. The balance of the charges were dismissed. Alvarez was required to register as a sex offender pursuant to section 290. The change of plea and waiver of rights form was incorporated into the minute order.

The probation report prepared for sentencing notes that Alvarez was born in Mexico, is a Mexican citizen, and was subject to an immigration hold. The probation officer noted that Alvarez had numerous prior convictions as an adult; had performed poorly when previously on misdemeanor probation, as demonstrated by his reoffending; and opined that Alvarez was not a suitable candidate for felony probation.

On May 23, 2012, Alvarez was sentenced to nine months in the county jail, to be followed by three years of formal probation, in accordance with the plea agreement.

On June 25, 2014, Alvarez filed a motion to vacate his conviction pursuant to section 1016.5. The motion stated that Alvarez was in the custody of the Immigration and Custom Enforcement Division of the Department of Homeland Security, which was seeking to deport him based upon his conviction in this case. Alvarez alleged that he had never been advised that entering a plea in the case would make him deportable. In his declaration accompanying the motion, Alvarez asserted that he had not been told by either his attorney or the trial court that pleading to the offense could make him deportable.

A hearing on the motion was held on September 9, 2014. Rivera testified at the hearing. Rivera has an undergraduate degree from the University of California, Berkeley in Spanish; he is fluent in both Spanish and English. Rivera noted that Alvarez apparently was fluent in both English and Spanish. Rivera spoke with Alvarez in Spanish. Alvarez had been interviewed by police in English and he responded appropriately to the questions in English.

4.

Rivera testified that shortly after Alvarez was arrested, an immigration hold was placed on him. Consequently, Rivera discussed with Alvarez that regardless of whether the case resolved by plea or verdict, "there would be an issue as to whether he would be allowed to remain in the United States."

Rivera opined that Alvarez "essentially confessed" to the charged offenses in the police video. This was another reason Rivera discussed immigration consequences with Alvarez. Rivera stated that he specifically discussed "deportation implications" with Alvarez shortly after he was arrested because there was an immigration hold and Alvarez was charged with three felonies and a "plea to any of those felonies would result in deportation."

Rivera did not read the entire change of plea form to Alvarez, word for word; some of the provisions of the form did not apply. With respect to the change of plea form, Rivera went over the change of plea form with Alvarez and read to Alvarez what was contained in page 2 of the form regarding immigration consequences and deportation.

Prior to ruling, the trial court noted that Alvarez had confessed to the felonies in the videotaped statement to police and was taking advantage of a plea deal because he was offered a nine month jail sentence with a probationary term, although probation had found him unsuitable for probation. The trial court opined that "in the immigration process" a term of "less than a year in custody sometimes will keep you from being deported." Alvarez was "caught between a rock and a hard place" because he knew he would be convicted at trial; he opted to "plead early on and get less than a year." The trial court stated that it "tried to assist him" in avoiding deportation by "giving him less than the full year in custody."

The trial court found that Alvarez knew he would be deported by pleading to the charge and made a knowing waiver. The motion was denied.

Alvarez filed a notice of appeal on September 10, 2014, and requested a certificate of probable cause, which was granted.

## DISCUSSION

Appellate counsel filed a *Wende* brief on December 16, 2014. That same day, a letter inviting Alvarez to submit a supplemental brief was sent. No supplemental brief was filed.

In the request for a certificate of probable cause, Alvarez alleged that he had not been advised of the immigration consequences of his plea pursuant to section 1016.5 because the trial court did not verbally advise him that he would be deported as a consequence of his plea; the written change of plea form was not translated into Spanish; and the form was not signed by a Spanish interpreter. Alvarez also alleged that at the motion to vacate the judgment, his defense counsel did not state that he read the form "verbatim" to him before Alvarez signed.

Unless the record discloses a clear abuse of discretion, an order denying a section 1016.5 motion is upheld on review. An abuse of discretion is shown if the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner. (*People v. Limon* (2009) 179 Cal.App.4th 1514, 1517-1518.) No such showing has been made.

A trial court is obligated to advise a defendant of immigration consequences of a plea pursuant to section 1016.5, subdivision (a). The advisement need not be in exact statutory language; substantial compliance is all that is required. (*People v. Castro-Vasquez* (2007) 148 Cal.App.4th 1240, 1244.) A defendant must establish that he was not properly advised, and that he was prejudiced by the nonadvisement, in order to prevail on a motion for failure to comply with section 1016.5. (*People v. Totari* (2002) 28 Cal.4th 876, 884.) Whether a defendant knew of the potential immigration consequences of a plea, despite the lack of an adequate advisement from the trial court, is a significant factor in determining prejudice. (*Ibid.*)

6.

At the section 1016.5 hearing, defense counsel Rivera testified that Alvarez was subject to an immigration hold shortly after he was arrested and that Rivera discussed with Alvarez that a plea or conviction to any of the three felony charges would result in deportation. As for the change of plea form, Rivera testified he went over the change of plea form with Alvarez, and read to Alvarez the paragraph on page 2 regarding immigration consequences, before Alvarez initialed his understanding and acceptance.

That the form is not translated into Spanish or signed by a Spanish interpreter is irrelevant. Rivera testified that Alvarez was apparently fluent in both Spanish and English. Alvarez was interviewed by police in English, responded appropriately to questions in English, and confessed to the offenses in English. Rivera's communications with Alvarez were in Spanish.

Although the record reflects that the trial court did not read the section 1016.5 advisement to Alvarez at the time he entered his no contest plea, Alvarez is not prejudiced. The trial court had before it the change of plea form, which Alvarez acknowledged he had read, initialed, and signed; that form includes the section 1016.5, subdivision (a) advisement. Rivera testified that he had more than one conversation with Alvarez regarding the fact that all three charged offenses were deportable offenses and a plea or verdict against him on any one of the three could result in deportation; Alvarez had been placed on an immigration hold shortly after his arrest.

Alvarez had no chance of plea bargaining to an offense that was not deportable; all three offenses were deportable and he had essentially confessed to the offenses on video when interviewed by police. As the trial court opined, Alvarez would have been convicted if he had gone to trial, in light of the police video. Alvarez entered into a negotiated disposition for less than a year in custody, in hopes of avoiding deportation. Alvarez did so with full knowledge that a plea to any of the charged offenses could result in deportation. Consequently, he was not prejudiced by any failure of the trial court to

administer the section 1016.5, subdivision (a) advisement on the record.  (*People v. Totari*, *supra,* 28 Cal.4th at p. 884.)

After an independent review of the record, we find no reasonably arguable or factual legal issues exist.

## **DISPOSITION**

The order denying the motion to vacate judgment is affirmed.

8.